## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTINE TOTH,** | : | *Electronically filed* |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | **Case No.:**  24-959 |
| | : | |
| **UNIVERSITY OF PITTSBURGH,** | : | |
| | : | |
| *Defendant*. | : | |
| | : | |
| | : | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Kristine Toth, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendant, University of Pittsburgh, of which the following is a statement:

## PARTIES

1.      Plaintiff, Kristine Toth (hereinafter "Ms. Toth"), is an adult individual who currently resides at 122 Silver Spring Trail, Greensburg, PA 15601.

2.      Defendant, University of Pittsburgh (hereinafter "Defendant"), is a Pennsylvania Nonprofit Corporation with a registered office at 2400 Cathedral of Learning, 4200 Fifth Ave., Pittsburgh, PA 15260.

## JURISDICTION AND VENUE

3.      Jurisdiction is proper as Ms. Toth brings this lawsuit under the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq*. ("ADA").

4.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

5.      Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

6.      On July 17, 2023, Ms. Toth dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

7.      On March 10, 2024, the EEOC issued a Notice of Right to Sue.

8.      As of June 28, 2024, the PHRC has investigated the Charge for one-year.

9.      Ms. Toth has exhausted all her administrative remedies under the ADA and PHRC.

## FACTUAL ALLEGATIONS

10.      Ms. Toth began working as an Executive Assistant to the Chair of the Department of Physical Therapy, James Irrgang (hereinafter "Mr. Irrgang"), on August 1, 2022.

11.      As an Executive Assistant, Ms. Toth was tasked with, including but not limited to, serving as the primary support to Mr. Irrgang, typically acting as liaison to various individuals within the Physical Therapy department. Ms. Toth would also be responsible for scheduling meetings on behalf of Mr. Irrgang and managing his schedule.

12.      Ms. Toth was qualified to perform the essential job duties for her position.

13.      On August 23, 2022, Ms. Toth was diagnosed with Covid-19 and exhibited symptoms such as brain fog, fatigue, dizziness, nausea, headaches/migraines, and sinus issues, among other things.

14.      These symptoms would impair Ms. Toth's ability to think, concentrate, learn, read, work, as well as make driving long distances difficult and hazardous.

15.     Since being diagnosed, Ms. Toth received regular care from her primary care physician. She has been seen for Long Covid-19 symptoms and has been referred to a neurologist for testing.

16.     Ms. Toth was permitted to work from home when feeling ill from August 23, 2022 through October 31, 2022.

17.     During Ms. Toth's three-month performance review on October 31, 2022, Mr. Irrgang stated that Ms. Toth would no longer allow her to work from home for more than two (2) days per week.

18.     Ms. Toth informed Mr. Irrgang of her disability and symptoms, which made it dangerous for her to drive to work.

19.     Notably, Ms. Toth would have to drive nearly 45 to 55 minutes from her home to the office.

20.     In response, Mr. Irrgang instructed her to seek an accommodation with the Disability Resources and Services Department.

21.     When Ms. Toth met with Defendant's Disability Resources and Services Representative Leigh Culley (hereinafter "Ms. Culley") in November 2022, Ms. Toth provided a doctor's note describing her symptoms how they made it difficult and dangerous for her to drive to work.

22.     In response, Ms. Culley told her that a determination would be made after meeting with the Physical Therapy HR representative and Mr. Irrgang.

23.     Ms. Culley sent an email to Ms. Toth on December 2, 2022 denying her accommodation. After having spoken with Defendant and the PT Department's HR representative,

Ms. Culley determined that working two (2) days per week at home was a sufficient accommodation.

24.     However, upon information and belief, Defendant already had a blanket policy that employees could work from home for at least two (2) days per week.

25.     Defendant failed to engage in the interactive process of acting in good faith to provide Ms. Toth with reasonable accommodation.

26.     Defendant failed to show or demonstrate to Ms. Toth how they would endure a undue hardship by providing Ms. Toth's reasonable accommodation.

27.     On January 12, 2023, Mr. Irrgang permitted a financial administrator, Haleigh Biondo (hereinafter "Ms. Biondo"), to work from home for more than two days per week when she had Covid-19, without requiring her to seek an accommodation.

28.     On January 23, 2023, Ms. Toth reported Mr. Irrgang's discriminatory treatment towards her to Jessica Thomas (hereinafter "Ms. Thomas"), Human Resources Representative from the School of Health and Rehabilitation Sciences. Ms. Toth stated that it was hypocritical for Defendant to accommodate Ms. Biondo for Covid-19 without engaging in the interactive process while forcing Ms. Toth to go through the accommodation request process, which ultimately resulted in the denial of her request.

29.     On January 26, 2023, Ms. Toth sent a follow-up email to Ms. Thomas but did not receive any response.

30.     Subsequently, Ms. Toth sent an email to Mr. Irrgang and Lauren Lagana (hereinafter "Ms. Lagana"), the Human Resources Representative for the Physical Therapy Department, inquiring about the scheduling of a meeting regarding the conclusion of her provisional period. Ms. Toth did not receive a response from the Defendant.

31.     On January 31, 2023, exactly one week after her initial report of discrimination, Defendant scheduled a meeting to formally terminate Ms. Toth's employment.

32.     Upon information and belief, Mr. Irrgang approved the termination of Ms. Toth's employment, citing "poor performance" as the reason.

33.     On the morning of January 31, 2023, Ms. Toth sent multiple emails requesting information about the scheduled meeting and indicating her awareness that the purpose of the meeting was to inform her of her termination. Ms. Toth sent an email to Mr. Irrgang and Ms. Lagana, which went unanswered. At approximately 6:45 a.m., Ms. Toth sent an email to Mr. Irrgang and Ms. Thomas, stating, "I am resigning my position effective immediately." Ms. Toth did this to avoid the embarrassment of attending the 3:00 p.m. meeting where she was to be formally terminated. It is crucial to note that this action by Ms. Toth does not constitute constructive termination. The termination was already in effect, and Ms. Toth was aware of her imminent termination, prompting her resignation to preempt the necessity of driving to work to receive the formal notification and associated embarrassment.

**COUNT I**
**FAILURE TO ACCOMODATE**
**IN VIOLATION OF THE ADA**

34.     Ms. Toth incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

35.     Defendant constitutes an "employer" within the meaning of the ADA.

36.     Ms. Toth was an employee and qualified individual with a disability within the meaning of the ADA during her employment with Defendant.

37.     For a failure to accommodate claim, Ms. Toth must establish that (1) the employer knew about her disability; (2) she requested accommodation or assistance for her disability; (3)

5

the employer did not make a good faith effort to assist in seeking accommodations; and (4) she could have been reasonably accommodated but for the employer's lack of good faith. *Tourtellote v. Eli Lily & Co.*, 636 F. App'x 831, 849 (3d Cir. 2016).

38.     On July 6, 2021, the Department of Labor published an article on its official blog titled "Workers With Long COVID-19: You May Be Entitled to Workplace accommodations." It states that some people who have had COVID-19 "continue to experience ongoing symptoms for months afterward, known as Post-Acute COVID-19 Syndrome or long COVID-19," which has "caused a wide variety of limitations[1]."

39.     On July 26, 2021, the United States Department of Health and Human Services ("DHHS") published a Guidance on "Long COVID" as a Disability Under the ADA, Section 504, and Section 1557. The DHHS states that Long COVID can be a disability under the ADA if it substantially limits one or more major life activities[2].

40.     Ms. Toth was diagnosed with COVID-19 and exhibited long COVID-19 symptoms months after her initial diagnosis. Ms. Toth's symptoms substantially limited one or more major life activities, including driving to work.

41.     Ms. Toth made Defendant aware of her impairment, which included submitting a request for accommodation and doctor's note.

42.     Ms. Toth was being accommodated for her impairment by being allowed to work from home when she was ill.

---

[1] U.S. Department of Labor Blog, *Workers With Long COVID-19: You May Be Entitled to Workplace Accommodations*, Linda Carter Batiste (July 6, 2021), https://blog.dol.gov/2021/07/06/workers-with-long-covid-19-may-be-entitled-to-accommodations.
[2] United States Department of Health and Human Services, Office for Civil Rights, *Guidance on "Long COVID" as a Disability Under the ADA, Section 504, and Section 1557* (July 26, 2021), https://www.hhs.gov/civil-rights/for-providers/civil-rights-covid19/guidance-long-covid-disability/index.html.

43.     Mr. Irrgang revoked Ms. Toth's accommodation and instructed Ms. Toth to request an accommodation through the Disability Resources and Services department.

44.     Ms. Toth requested a new accommodation, as instructed by Defendant.

45.     Defendant denied Ms. Toth's accommodation request.

46.     Defendant did not make a good faith effort to secure Ms. Toth's accommodation because there was no reason to revoke Ms. Toth's previously-granted accommodation in the first place. Additionally, Defendant thereafter permitted a coworker, Ms. Biondo, an exception to the work from home policy for the same disability.

47.     As evidenced by Ms. Biondo's accommodation, and the lack of reasoning for revoking Ms. Toth's accommodation, Defendant could have accommodated Ms. Toth's disability but for its lack of good faith.

48.     Defendant failed to show how they would be unduly burdened by providing Ms. Toth's reasonable accommodation.

49.     As a direct and proximate cause of the aforementioned conduct, Ms. Toth suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in past, present and future.

50.     Defendant's actions were willful, wanton, intentional, and done in conscious disregard to the rights of Ms. Toth.

WHEREFORE, Plaintiff, Kristine Toth, hereby requests that this Honorable Court enter judgment in her favor, and against Defendant, University of Pittsburgh, including back pay, front pay, compensatory damages, punitive damages, costs, and attorney's fees, in addition to such other relief as deemed just and proper by this Honorable Court.

## COUNT II
## DISABILITY DISCRIMINATION

**IN VIOLATION OF THE ADA**

51.     Ms. Toth incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

52.     To establish a prima facie case of discrimination under the ADA, Ms. Toth must show: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations by the employer; and (3) she suffered an otherwise adverse employment decision as a result of discrimination. *See McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir. May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

53.     Defendant constitutes an "employer" within the meaning of the ADA.

54.     Ms. Toth was an employee and qualified individual with a disability within the meaning of the ADA during her employment with Defendant.

55.     Ms. Toth has a physical and mental impairment that substantially limits one or more major life activities, including driving.

56.     Ms. Toth is otherwise qualified to perform the essential functions of her job position, with or without reasonable accommodation.

57.     Defendant discriminated against Ms. Toth by revoking her "work from home" accommodation, not investigating her discrimination report, denying her proper training, ignoring her communications, and ultimately terminating her employment.

58.     As a direct and proximate cause of the aforementioned conduct, Ms. Toth suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in past, present and future.

59.     Defendant's actions were willful, wanton, intentional, and done in conscious disregard to the rights of Ms. Toth.

WHEREFORE, Plaintiff, Kristine Toth, hereby requests that this Honorable Court enter judgment in her favor, and against Defendant, University of Pittsburgh, including back pay, front pay, compensatory damages, punitive damages, costs, and attorney's fees, in addition to such other relief as deemed just and proper by this Honorable Court.

## COUNT III
## RETALIATORY TERMINATION
## IN VIOLATION OF THE ADA

60.     Ms. Toth incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

61.     To prove an ADA retaliation claim, a plaintiff must establish that: (1) he engaged in protected activity; (2) his employer took adverse action after or contemporaneous with his protected activity; and (3) a causal link exists between his protected activity and the employer's adverse action. *Williams v. Phila. Hous. Auth. Police Dept't.*, 380 F. 3d 751, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Rel. Med. Ctr.*, 704 Fed. Appx. 41, 49-50 (3d Cir. 2017).

62.     Defendant is an "employer" under the ADA.

63.     Ms. Toth has a physical or mental impairment that substantially limits one or more major life activities.

64.     Ms. Toth engaged in a protected activity by reporting Mr. Irrgang's disability discrimination to Defendant.

65.     A week after, Defendant took adverse action against Ms. Toth by firing her.

9

66.     Defendant claimed that the reason for termination was "poor performance," but Mr. Irrgang failed and refused to properly train Ms. Toth according to the University of Pittsburgh's Management Handbook.

67.     Additionally, Ms. Toth was the one who requested a meeting with HR regarding Mr. Irrgang's discriminatory conduct.

68.     Merely a week after reporting the discrimination to HR, Ms. Toth was fired.

69.     As a direct and proximate cause of the aforementioned conduct, Ms. Toth suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in past, present and future.

70.     Defendant's actions were willful, wanton, intentional, and done in conscious disregard to the rights of Ms. Toth.

WHEREFORE, Plaintiff, Kristine Toth, hereby requests that this Honorable Court enter judgment in her favor, and against Defendant, University of Pittsburgh, including back pay, front pay, compensatory damages, punitive damages, costs, and attorney's fees, in addition to such other relief as deemed just and proper by this Honorable Court.

<u>COUNT IV</u>
**FAILURE TO ACCOMODATE
IN VIOLATION OF THE PHRA**

71.     Ms. Toth incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

72.     The PHRA is largely similar to the ADA but not limited in scope by the ADA, and offers greater protections. *Harrisburg Area Cmt. Coll. v. Pa. Human Rels. Comm'n*, 245 A.3d 283, 287-88 (Pa. Commw. Ct. 2020).

73.     Defendant constitutes an "employer" within the meaning of the PHRA.

74.     Ms. Toth was an employee and qualified individual with a disability within the meaning of the ADA during her employment with Defendant.

75.     For a failure to accommodate claim, Ms. Toth must establish that (1) the employer knew about her disability; (2) she requested accommodation or assistance for her disability; (3) the employer did not make a good faith effort to assist in seeking accommodations; and (4) she could have been reasonably accommodated but for the employer's lack of good faith. *Tourtellote*, 636 F. App'x at 849.

76.     On July 6, 2021, the Department of Labor published an article on its official blog titled "Workers With Long COVID-19: You May Be Entitled to Workplace accommodations." It states that some people who have had COVID-19 "continue to experience ongoing symptoms for months afterward, known as Post-Acute COVID-19 Syndrome or long COVID-19," which has "caused a wide variety of limitations3."

77.     On July 26, 2021, the United States Department of Health and Human Services ("DHHS") published a Guidance on "Long COVID" as a Disability Under the ADA, Section 504, and Section 1557. The DHHS states that Long COVID can be a disability under the ADA if it substantially limits one or more major life activities4.

78.     Ms. Toth was diagnosed with COVID-19 and exhibited long COVID-19 symptoms months after her initial diagnosis. Ms. Toth's symptoms substantially limited one or more major life activities, including driving to work.

79.     Ms. Toth made Defendant aware of her impairment, which included submitting a request for accommodation and doctor's note.

---

[3] See footnote 1
[4] See footnote 2

11

80.     Ms. Toth was being accommodated for her impairment by being allowed to work from home when she was ill.

81.     Mr. Irrgang revoked Ms. Toth's accommodation and instructed Ms. Toth to request an accommodation through the Disability Resources and Services department.

82.     Ms. Toth requested a new accommodation, as instructed by Defendant.

83.     Defendant denied Ms. Toth's accommodation request.

84.     Defendant did not make a good faith effort to secure Ms. Toth's accommodation because there was no reason to revoke Ms. Toth's previously-granted accommodation in the first place. Additionally, Defendant thereafter permitted a coworker, Ms. Biondo, an exception to the work from home policy for the same disability.

85.     As evidenced by Ms. Biondo's accommodation, and the lack of reasoning for revoking Ms. Toth's accommodation, Defendant could have accommodated Ms. Toth's disability but for its lack of good faith.

86.     Defendant failed to show how they would be unduly burdened by providing Ms. Toth's reasonable accommodation.

87.     As a direct and proximate cause of the aforementioned conduct, Ms. Toth suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in past, present and future.

88.     Defendant's actions were willful, wanton, intentional, and done in conscious disregard to the rights of Ms. Toth.

WHEREFORE, Plaintiff, Kristine Toth, hereby requests that this Honorable Court enter judgment in her favor, and against Defendant, University of Pittsburgh, including back pay, front

pay, compensatory damages, punitive damages, costs, and attorney's fees, in addition to such other relief as deemed just and proper by this Honorable Court.

## COUNT V
## DISABILITY DISCRIMINATION
## IN VIOLATION OF THE PHRA

89.     Ms. Toth incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

90.     The PHRA is largely similar to the ADA but not limited in scope by the ADA, and offers greater protections. *Harrisburg Area Cmt. Coll.*, 245 A.3d at 287-88.

91.     To establish a prima facie case of discrimination under the ADA, Ms. Toth must show: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations by the employer; and (3) she suffered an otherwise adverse employment decision as a result of discrimination. *See McGlone*, 2018 WL 2193658, at *2 (citing *Gaul*, 134 F.3d at 580).

92.     Defendant constitutes an "employer" within the meaning of the PHRA.

93.     Ms. Toth was an employee and qualified individual with a disability within the meaning of the PHRA during her employment with Defendant.

94.     Ms. Toth has a physical and mental impairment that substantially limits one or more major life activities, including driving.

95.     Ms. Toth is otherwise qualified to perform the essential functions of her job position, with or without reasonable accommodation.

96.     Defendant discriminated against Ms. Toth by revoking her "work from home" accommodation, not investigating her discrimination report, denying her proper training, ignoring her communications, and ultimately terminating her employment.

97.     As a direct and proximate cause of the aforementioned conduct, Ms. Toth suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in past, present and future.

98.     Defendant's actions were willful, wanton, intentional, and done in conscious disregard to the rights of Ms. Toth.

WHEREFORE, Plaintiff, Kristine Toth, hereby requests that this Honorable Court enter judgment in her favor, and against Defendant, University of Pittsburgh, including back pay, front pay, compensatory damages, punitive damages, costs, and attorney's fees, in addition to such other relief as deemed just and proper by this Honorable Court.

### COUNT VI
### RETALIATORY TERMINATION
### IN VIOLATION OF THE PHRA

99.     Ms. Toth incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

100.    The PHRA is largely similar to the ADA but not limited in scope by the ADA, and offers greater protections. *Harrisburg Area Cmt. Coll.*, 245 A.3d at 287-88.

101.    To prove an ADA retaliation claim, a plaintiff must establish that: (1) he engaged in protected activity; (2) his employer took adverse action after or contemporaneous with his protected activity; and (3) a causal link exists between his protected activity and the employer's adverse action. *Williams*, 380 F. 3d at 759; *Lackey*, 704 Fed. Appx. at 49-50.

102.    Defendant is an "employer" under the PHRA.

103.    Ms. Toth has a physical or mental impairment that substantially limits one or more major life activities.

104.    Ms. Toth engaged in a protected activity by reporting Mr. Irrgang's disability discrimination to Defendant.

105.    A week after, Defendant took adverse action against Ms. Toth by firing her.

106.    Defendant claimed that the reason for termination was "poor performance," but Mr. Irrgang failed and refused to properly train Ms. Toth according to the University of Pittsburgh's Management Handbook.

107.    Additionally, Ms. Toth was the one who requested a meeting with HR regarding Mr. Irrgang's discriminatory conduct.

108.    Merely a week after reporting the discrimination to HR, Ms. Toth was fired.

109.    As a direct and proximate cause of the aforementioned conduct, Ms. Toth suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in past, present and future.

110.    Defendant's actions were willful, wanton, intentional, and done in conscious disregard to the rights of Ms. Toth.

WHEREFORE, Plaintiff, Kristine Toth, hereby requests that this Honorable Court enter judgment in her favor, and against Defendant, University of Pittsburgh, including back pay, front pay, compensatory damages, punitive damages, costs, and attorney's fees, in addition to such other relief as deemed just and proper by this Honorable Court.

**JURY TRIAL DEMANDED**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

June 28, 2024

By: _____
    Joshua P. Ward (Pa. I.D. 320347)
    J.P. Ward & Associates, LLC
    The Rubicon Building
    201 South Highland Avenue
    Suite 201
    Pittsburgh, PA 15206
    Counsel for Plaintiff